1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11

JERRY LEE KING,

Case No. 1:17-cv-00676-JLT-EPG (PC)
ORDER GRANTING DEFENDANTS'
MOTION FOR RECONSIDERATION;
GRANTING MOTION FOR JUDGMENT ON
THE PLEADINGS
(Docs. 106, 123)

12

Plaintiff,

13

v.

14

R. VILLEGAS and P. CRUZ,

15

Defendants.

16

17

**INTRODUCTION**

18

On April 26, 2023, District Judge Anthony W. Ishii adopted findings and

19

recommendations to deny Defendants' motion for judgment on the pleadings. (Docs. 106, 115,

20

118.) On May 10, 2023, Defendants filed a motion for reconsideration of that order under Local

21

Rule 230(j). (Doc. 123.) On May 22, 2023, Plaintiff filed and opposition, (Doc. 124), and

22

Defendants replied (Doc. 126). The Court has reviewed the subsequent authority cited by

23

Defendants, as well as Judge Ishii's order (Doc. 118) and the underlying findings and

24

recommendations (Doc. 115). For the reasons set forth below, the Court concludes that

25

reconsideration is warranted and, upon reconsideration, grants the motion for judgment on the

26

pleadings.

27

///

28

///

1

## STANDARD OF DECISION

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (internal quotations marks and citations omitted). "Clear error occurs when the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (internal quotation marks omitted). For example, it is a clear error of law to not apply controlling precedent. *Id.* "Courts of the Ninth Circuit generally treat 'manifest injustice' as very nearly synonymous with 'clear error,' defining manifest injustice as any error in the trial court that is direct, obvious and observable, such as a defendant's guilty plea that is involuntary." *All. for Wild Rockies v. United States Forest Serv.*, 2020 WL 7082687, at *2 (D. Idaho Dec. 3, 2020) (internal citation omitted). "There may also be other, highly unusual, circumstances warranting reconsideration." *School Dist. No. 1J Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation . . ." of that which was already considered by the Court in rendering its decision, *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (internal quotation marks and citation omitted).[1] Whether to grant a motion for reconsideration is within the sound discretion of the court. *Navajo Nation v. Confederated Tribes and Bands of the Yakima Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

## DISCUSSION

This case is proceeding on Plaintiff's claims for excessive force in violation of the Eighth Amendment against defendants Villegas and Cruz based on allegations that on August 17, 2016,

---

[1] Relatedly, though defendants rely exclusively on Local Rule 230(j), Federal Rule of Civil Procedure 60(b) provides that the Court may relieve Plaintiff from a final judgment, order, or proceeding "for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief."

while Plaintiff was restrained, defendant Villegas rammed Plaintiff's head into a wall and swept him off his feet and defendant Cruz hit Plaintiff with great force and a closed fist in his right eye while Plaintiff was lying on the ground in compliance and not putting up any struggle or resistance. (Doc. 115 at 2 (citing Docs. 1, 14, & 20).)

Defendants maintain in their motion for judgment on the pleadings and subsequent filings that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because the civil rights allegations in this case contradict the facts referred to in Plaintiff's nolo contendere plea to violating California Penal Code § 69.[2] (*See generally* Doc. 106-1.) According to the transcript of Plaintiff's plea hearing in state court, Plaintiff "stipulate[d] to a factual basis based on the probable cause statement and the reports in discovery with the understanding that this is a People v. West[3] and a no contest plea[.]" (Doc. 106-2 at 62 (Tr. of Plea Hearing, Mar. 16, 2022, 12:21-28).) The Plea Form signed by both Defendant (via thumbprint) and his attorney stipulated "that there is a factual basis for the entry of this plea and admission of the prior convictions or enhancements, based upon the offense reports contained within the court file or the testimony introduced at the preliminary hearing, plus any results of laboratory analysis conducted on any suspected controlled substances seized in this case." (Doc. 106-2 at 49.)

The Probable Cause Declaration referred to in the no contest plea transcript describes the incident as follows: "On 08/18/2016,[4] at about 0955 hours, Inmate King battered a Peace Officer by punching the Officer with his fists and injuring another officer while trying to subdue King's

---

[2] Cal. Pen. Code § 69(a) provides: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment."

[3] *People v. West*, 3 Cal. 3d. 595 (1970), "addressed the validity of a plea to an uncharged lesser offense entered pursuant to a plea bargain." *Loftis v. Almager*, 704 F.3d 645, 651 (9th Cir. 2012) (citing *People v. Rauen*, 201 Cal.App.4th 421, 424 n. 1 (2011), and *In re Alvernaz*, 2 Cal.4th 924, 932 (1992) (characterizing a *West* plea as "a plea of nolo contendere, not admitting a factual basis for the plea"). In sum "*West* approved the practice of plea bargaining to a lesser charge in order to avoid exposure to greater penalties." *Loftis*, 704 F.3d at 651.

[4] As the findings and recommendations point out (Doc. 155 at 13 n. 5), the complaint in our case suggests the events took place on August 17, 2016, while the Probable Cause Declaration and police report mention August 18, 2016. The Court assumes that one or the other contains a typographical error, as the nature of the incidents described generally overlap and it seems implausible for two such similar incidents to have taken place on consecutive days.

3

1   attack. King was rehoused in Administrative Segregation Unit." (Doc. 106-2 at 10). The no

2   contest plea also referred to and relied upon other "reports in discovery" concerning the incident.

3   One of the documents referred to, a Crime/Incident Report, describes the event as follows:

> On Wednesday, August 17, 2016, at approximately 0955 hours, inmate King AT4450, battered Officer [redacted] by punching him with his right fist, then becoming resistive. Inmate King was facing the wall outside the Mental Health building on the Facility C Upper Yard. Inmate King balled his hands into fists, then swung his right hand behind him striking Officer [redacted] in the right shoulder area. He then attempted to elbow [redacted] repeatedly. Using both his hands, Officer [redacted] was able to grab King by his shoulders and force him forward into the wall then to the ground with the assistance of Officer [redacted]. Inmate King continued to be resistive by thrashing his body back and forth. Officer [redacted] maintained control of King by using his hands and body weight to hold King down by his back. Officer [redacted] grabbed King's legs and maintained control of them to ensure he did not kick anyone. During this time, Officer [redacted] announced a Code 1 staff assault via his institutional radio. After Officer Cruz took control of King's legs, he stopped thrashing his body and complied with orders to submit to handcuffs.

14   (*Id*. at 12). Defendants maintain that the facts in the Probable Cause Declaration and reports

15   referred to in the no contest plea directly contradict the allegations in Plaintiff's complaint and

16   therefore require dismissal of Plaintiff's excessive force claims under *Heck*. (Doc. 106-1 at 6.)

17        In the findings and recommendations issued November 17, 2022, the magistrate judge

18   disagreed, recommending instead that the Court find that: (1) the facts contained within the

19   Probable Cause Declaration and reports should not be considered in evaluating the applicability

20   of *Heck*; and (2) even if the Court were to consider those facts, the favorable termination rule

21   would not apply. (Doc. 115 at 9–16.) Over Defendants' objections, the previously assigned

22   district judge adopted the findings and recommendations on April 26, 2023. (Doc. 118.)

23        On the question of whether the Court should consider the Probable Cause Declaration and

24   related reports before the state criminal court, the findings and recommendations evaluated the

25   relevant authorities in some detail before concluding that "[c]onsidering the nature of nolo

26   contendere pleas, the Advisory Comments, and the text of Federal Rule of Civil Procedure 410,

27   . . . dismissal of this case based on inconsistency with the factual information that was referred to

28   as part of a no contest plea is not warranted." (Doc. 115 at 15.) The findings and

4

recommendations first evaluated whether the nolo contendere plea itself (bare of any factual

underpinnings) would require dismissal of Plaintiff's civil claims under *Heck*:

> As an initial matter, Defendants are correct that the Ninth Circuit has applied the favorable termination rule to nolo contendere pleas, when success on the claim would necessarily render the resulting conviction invalid. *See, e.g., Szajer v. City of Los Angeles*, 632 F.3d 607 (9th Cir. 2011) (finding that the plaintiffs' claims were barred by the favorable termination rule based on a no contest plea); *Sanders v. City of Pittsburg*, 14 F.4th 968, 972 (9th Cir. 2021) (finding that the plaintiff's claim was barred by the favorable termination rule based on a no contest plea).

> However, Plaintiff's excessive force claims in this § 1983 case against Defendants are not necessarily inconsistent with a conviction for violating California Penal Code § 69, which states: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of his or her duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment pursuant to subdivision (h) of Section 1170, or in a county jail not exceeding one year, or by both such fine and imprisonment." Cal. Penal Code § 69(a). As a general rule, success on an excessive force claim does not, in and of itself, necessarily imply the invalidity of a conviction for violating California Penal Code § 69. For example, in *Yount v. City of Sacramento*, 43 Cal. 4th 885 (2008), the California Supreme Court explained:

>> [A] defendant might resist a lawful arrest, to which the arresting officers might respond with excessive force to subdue him. The subsequent use of excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it. Though occurring in one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer.

> *Id*. at 899 (citation and internal quotation marks omitted). Similarly, in *Correa v. Braudrick*, 2022 WL 2308803, at \*7 (E.D. Cal. June 27, 2022), *report and recommendation adopted*, 2022 WL 7096437 (E.D. Cal. Oct. 12, 2022), the Court found that "[a] conviction under Cal. Penal Code § 69, which makes it a crime to resist, obstruct, or delay a peace officer in the performance of his or her duties, 'can be valid even if, during a single continuous chain of events, some of the officer's conduct was unlawful,' because the conviction itself 'requires only that some lawful police conduct was resisted, delayed, or obstructed during that continuous chain of events.'" (citing *Hooper v. County of San Diego*, 629 F.3d 1127, 1131 (9th Cir. 2011)).

5

Thus, Plaintiff's conviction is not necessarily inconsistent with Plaintiff's pending claims and does not warrant dismissal under *Heck*. In other words, Defendants may have used excessive force in violation of the Eighth Amendment against Plaintiff even if, at some point, Plaintiff resisted, obstructed, or delayed Defendants in the performance of their duty.

(Doc. 115 at 9–11.) Defendant does not appear to take issue with this conclusion. (*Id*. at 11 ("Defendants appear to concede this when, in their motion for judgment on the pleadings, they argue that Plaintiff's claims are inconsistent with the *facts* set forth in the Probable Cause Declaration and reports in discovery (ECF No. 106-1, pgs. 2 & 5-6), rather than with the conviction itself.").)

The focus of the briefing and the findings and recommendations was the Defense argument that Plaintiff's excessive force claims "directly and irreconcilably conflict[]" with the "factual basis" of the plea. (Doc. 106-1 at 5–6.) This, as the findings and recommendations indicated, "presents a more difficult issue" because a "a nolo contendere plea is not an admission of guilt or acceptance of certain facts. It is an agreement that a criminal defendant will not contest a conviction." (Doc. 115 at 11 (citing *United States v. Nguyen*, 465 F.3d 1128, 1130 (9th Cir. 2006) ("[A] plea of nolo contendere . . . is a special creature under the law. It is, first and foremost, not an admission of factual guilt. It merely allows the defendant so pleading to waive a trial and to authorize the court to treat him as if he were guilty.").)[5]

---

[5] The findings and recommendations pointed out that the state criminal court advised Plaintiff that his plea was not an admission. (Doc. 106-2 at 55:3–18 ("The Court: . . . [Defendant's counsel] asked if I would be willing to accept a People vs. West plea, which is I don't really admit. You plead no contest, it's kind of like no contest on steroids, if that makes sense . . . It's saying no contest, I sort of give up, and I want to settle it for locking in a deal.")). The findings and recommendations further pointed out that Plaintiff's intent in pleading was that his plea could not be used against him in his civil litigation. (*Id*. at 60:10–13 ("[Plaintiff]: That's part of my plea agreement here today, trying to resolve this case, is because I don't want it to affect my civil case in any way.")). Plaintiff's intent notwithstanding, the state criminal court made no promises as to the impact of his no contest plea on his federal civil claims. Plaintiff and the state court judge had a conversation about that issue:

THE DEFENDANT: Yes, Your Honor.

I have a question before --

THE COURT: Yeah, go right ahead.

THE DEFENDANT: I'm going to plead no contest, Your Honor, under a West plea.

THE COURT: Yes, sir.

THE DEFENDANT: If this somehow affects my civil case, can I retract my plea here?

6

The findings and recommendations focused on whether Federal Rule of Evidence 410(a) ("Rule 410(a)") bars this Court from considering the factual underpinnings of the no contest plea (i.e., the Probable Cause Declaration and reports in discovery), in evaluating the applicability of *Heck*. Rule 410(a) states:

> In a civil or criminal case, evidence of the following is not admissible against the

---

> THE COURT: That -- I don't believe that will be good cause, so --
>
> THE DEFENDANT: Okay.
>
> THE COURT: It shouldn't. But good cause is not understanding your constitutional rights. And that is an unrelated matter. I don't have any control over the civil case.
>
> And it's also -- you said any affect --
>
> THE DEFENDANT: Well, I'm just saying because I went to the United States Courthouse and I sat down with the attorney general.
>
> ***
>
> THE DEFENDANT: And I sat with the attorney general and United States Court Judge. They explained to me I had -- I did not have criminal charges until they filed the heck bar. They contacted the Kern County D.A. 1 s office. They asked the D.A. how they were going to proceed with their case so they knew how to proceed with the civil. This was two years after the alleged incident. That's when I received the charges. So I didn't even have the charges until I went and sat down with the attorney general for my civil case.
>
> THE COURT: Right. You mentioned that before.
>
> And that, in your mind, that is very suspicious.
>
> THE DEFENDANT: Well, not that. That's part of my plea agreement here today, trying to resolve this case, is because I don't want it to affect my civil case in any way.
>
> THE COURT: Right. And the problem is I don't do federal law. You know, I -- I have almost no civil experience.
>
> THE DEFENDANT: Right.
>
> THE COURT: I don't know what might or might not affect that. I really just can't tell you.
>
> So you can resolve this case today. It is no contest. It is a West plea. That's the best I can tell you. **You cannot enter the plea today and set it off and go talk to your civil attorney.** You could set it for trial. I just -- I can't I can't promise you something that I don't know. And -- does that make sense?
>
> THE DEFENDANT: Yes, sir. I understand.

(Doc. 106-2 59:3-60:27, emphasis added.) Given this record, the Court does not believe this case is like *Flores-Haro v. Slade*, 160 F. Supp. 3d 1231, 1234–35 (D. Or. 2016), *aff'd in part, rev'd in part and remanded on other grounds*, 686 F. App'x 454 (9th Cir. 2017), where the district court declined to apply *Heck* because the state court judge took the plaintiff's plea in a manner that confirmed a later civil action *could* proceed, even though the civil claims were rooted in the same factual basis as his criminal conviction. To the contrary, the court specifically advised the plaintiff he could not advise him as to the implication of the plea on his civil case and indicated that the court would continue the hearing to allow him time to consult with a civil attorney.

defendant who made the plea or participated in the plea discussions:

> (1) a guilty plea that was later withdrawn;
> (2) *a nolo contendere plea*;
> (3) *a statement made during a proceeding on either of those pleas* under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
> (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea

Fed. R. Evid. 410(a)(1)-(4) (emphasis added). The Advisory Committee Notes from the 1972 Proposed Rules state that Rule 410 "gives effect to the principal traditional characteristic of the *nolo* plea, i.e. avoiding the admission of guilt which is inherent in pleas of guilty." The findings and recommendations also cited Federal Rule of Criminal Procedure 11, which permits nolo contendere pleas. As the findings and recommendations point out (Doc. 115 at 12), the Advisory Committee Notes to 1974 Amendments to Rule 11 state that "[a] defendant who desires to plead nolo contendere will commonly want to avoid pleading guilty because the plea of guilty can be introduced as an admission in subsequent civil litigation." Those Notes also state that Rule 11 "does not speak directly to the issue of whether a judge may accept a plea of guilty where there is a factual basis for the plea but the defendant asserts his innocence. The procedure in such case would seem to be to deal with this as a plea of nolo contendere, the acceptance of which would depend upon the judge's decision as to whether acceptance of the plea is consistent with the interest of the public in the effective administration of justice." *Id.* (citations and internal quotation marks omitted).

Based on the above, the findings and recommendations concluded that *Heck*'s favorable termination rule did not apply because Plaintiff did not admit to facts that were inconsistent with his claims. (Doc. 115 at 13.) Rather those facts were included only to inform the criminal court that there is a factual basis for plea, and the rules cited above prevent such facts from being used against Plaintiff in this case. ((Doc. 115 at 13.) The findings and recommendations rejected Defendants' arguments to the contrary, as follows:

> Defendants argue that, as Plaintiff is the plaintiff in the case and not the defendant, Defendants are not using the no contest plea "against

the defendant." Thus, Defendants argue that Rule 410 does not apply. Some courts have accepted this argument. *See, e.g., Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988) (finding that Rule 410 did not apply because "the persons who entered prior no-contest pleas are now plaintiffs in a civil action. Accordingly, use of the no-contest plea for estoppel purposes is not 'against the defendant' within the meaning of Fed. R. Evid. 410").

However, the Court finds this to be a strained reading of Rule 410. Instead, the Court adopts the analysis of *Norton v. Stille*, 2014 WL 12279521, at *2 (W.D. Mich. Apr. 14, 2014). In *Norton*, the Court found that "Rule 410 applies by its terms to 'a civil or criminal case' and includes no limitation on whether the pleading party is a plaintiff or defendant in the litigation. Fed. R. Evid. 410(a). The only reference the rule makes to 'the defendant' is describing the person protected by the rule: namely, 'the defendant who made the plea.' *Id*. The broad prohibition makes no exception for use by a civil defendant against a civil plaintiff . . ." *Norton*, 2014 WL 12279521, at *2. This Court agrees that, in referencing "the defendant who made the plea," Rule 410 is describing the person protected by the Rule, that is, the defendant who made the plea. There is no indication in the text suggesting that Rule 410 does not apply when "the defendant who made the plea" subsequently files a civil case.

Next, Defendants argue that Rule 410 does not apply because the plea is not being offered against Plaintiff "as an admission or evidence of guilt within the meaning of Rule 410." (ECF No. 113, p. 4). Defendants cite to several cases for this proposition. *See, e.g., Arrington v. City of Los Angeles*, 2021 WL 4168156, at *1 (9th Cir. Sept. 14, 2021) ("Arrington's conviction was not admitted 'against' him as an evidentiary admission. Fed. R. Evid. 410. The *Heck* issue was decided as a matter of law by the district court—properly so, as the legal consequences of the conviction preclude him from having a cognizable section 1983 claim for false arrest and false imprisonment under *Heck*."); *Alatraqchi v. City & County of San Francisco*, 2001 WL 637429, at *2 (N.D. Cal. May 30, 2001) ("Rule 410 prohibits the use of a 'no contest' plea, against the defendant who made the plea, as an admission or as evidence of guilt in another proceeding. In this case, however, [Defendant] does not seek to use plaintiff's plea against plaintiff as an admission or as evidence of guilt. Under *Heck*, plaintiff's 'no contest' plea is significant merely by the fact of its existence, and by the fact that it resulted in a criminal conviction.").

Most of the cases cited by Defendants focus on the use of the conviction itself to obtain a dismissal of a civil case, and do not hold that a federal court should dismiss a civil claim because it is inconsistent with facts in documents referred to in a no contest pleas hearing even where the claim is *not* necessarily inconsistent with the actual plea and conviction.

Defendants do cite one case, *Galvan v. City of La Habra*, 2014 WL 1370747 (C.D. Cal. Apr. 8, 2014), in which the Court overruled the plaintiff's Rule 410 objection and appears to have considered "the

form confirming [the plaintiff's] s contendere plea … as well as the court minutes noting the details of [the plaintiff's] plea," *id.* at 8. However, *Galvan* is distinguishable from this case. Here, Defendants are asking the Court to consider not just the form confirming the plea and court minutes, but also documents referred to in Plaintiff's plea hearing. Moreover, the *Galvan* Court relied, at least in part, on the fact that that the criminal defendant was the plaintiff in the pending civil rights case. *Id.* at 10–12. However, as described above, the Court finds this to be a strained reading of Rule 410.

Considering the nature of nolo contendere pleas, the Advisory Comments, and the text of Federal Rule of Civil Procedure 410, the Court finds that dismissal of this case based on inconsistency with the factual information that was referred to as part of a no contest plea is not warranted.

(Doc. 115 at 14–15.)

In seeking reconsideration, Defendants do not identify any contrary, binding authority that predated the findings and recommendations. Instead, Defendants point to the Ninth Circuit's unpublished decision in, *Briseno v. City of W. Covina*, 2023 WL 2400833, at *1 (9th Cir. Mar. 8, 2023), which issued after the findings and recommendations and objections were filed. There, the Ninth Circuit considered an appeal from a 2021 decision out of the Central District of California. *Briseno v. City of W. Covina*, No. CV 20-2986 MRW, 2021 WL 6690564, at *1 (C.D. Cal. Dec. 23, 2021). Briseno pled no contest to a burglary charge and a charge of resisting arrest. *Id.* at *1. During his plea colloquy, Briseno agreed to stipulate to a factual basis for the plea based upon a police report, which the district court summarized and considered in evaluating the applicability of *Heck* to Briseno's subsequent civil rights action. *Id.* at *1–*3. The district court ultimately found that the factual basis for the plea established that Briseno resisted arrest at numerous points during the incident in question and therefore that his acknowledgement of guilt necessarily meant that the police use of force "through to the end of his resistance" was lawful. *Id.* at *4. Given these facts, the district court found Briseno's excessive force claims barred by *Heck*. *Id.* ("Heck bars this later civil rights action in which he alleges that the same police conduct was unlawful."). In so doing, the district court cited with approval *Galvan*, 2014 WL 1370747 at *9, which the findings and recommendations in the instant matter declined to follow. *Briseno*, 2021 WL 6690564, at *2 n. 2.

Without specifically discussing the key issue—whether facts stipulated to during the process of a no contest plea should be considered in a subsequent *Heck* analysis—the Ninth Circuit affirmed. *Briseno*, 2023 WL 2400833, at *1. By affirming, the Ninth Circuit implicitly approved of the district court's treatment of the factual record and, relatedly, the source of that factual record, as no alternative rationale for applying *Heck* was provided by the district court. More specifically, the Ninth Circuit explained that Briseno's excessive force claim was barred by *Heck* because it was "predicated on allegedly unlawful actions by the officer *at the same time* as the plaintiff's conduct that resulted in his [resisting arrest under Cal. Penal Code] § 148(a)(1) conviction." 2023 WL 2400833, at *1 (*citing Sanders v. City of Pittsburg*, 14 F.4th 968, 971 (9th Cir. 2021). Without the information from the police report, there would have been no way to evaluate whether the civil claims overlapped with the timeline that formed the basis for the § 148(a)(1) conviction.

It does not appear that Defendants directed the magistrate judge's attention to the district court's opinion in *Briseno* in a timely manner, nor did they cite it in their objections. Moreover, they failed to alert the Court of the Ninth Circuit's opinion in *Briseno*, even though it issued on March 8, 2023, more than a month prior to the Court's adoption of the findings and recommendations on April 26, 2023. Reconsideration could be denied on those grounds alone. *See Vartanian v. State Bar of Cal.*, No. 5:18-CV-00826-EJD, 2018 WL 3609087, at *2 (N.D. Cal. July 27, 2018), aff'd, 794 F. App'x 597 (9th Cir. 2019) ("Plaintiff could have brought [the cited decision] to the Court's attention well before it issued its rulings."). Also, the ruling is unpublished and therefore is not binding outside the context of the *Briseno* matter. *See* Ninth Circuit Rule 36-3(a). Some authority suggests, therefore, that reconsideration may be denied because the case is not "controlling." *See Rodriguez v. Farmers Ins. Co. of Arizona*, No. CV 09-06786 JGB (AJWx), 2014 WL 12696740, at *2 (C.D. Cal. May 29, 2014) (finding unpublished Ninth Circuit opinion did not constitute a change in controlling law) (citing *Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 225 (D. Ariz. 2012)).

Nonetheless, *Briseno* appears to be the first time the Ninth Circuit has ruled on an appeal from a case that directly addressed the central issue in contention here: whether factual material

considered as part of the factual basis for a no contest plea can be considered by a court applying *Heck* to a subsequent civil lawsuit. As a result, the Court is hard-pressed to ignore *Briseno* on reconsideration. In addition, the district court's decision in *Briseno* is aligned with other authority. Notably, several district courts have adopted the argument that use of a no contest plea is not a use that is "against the defendant" within the meaning of Rule 410. *See Galvan v. City of La Habra*, No. SACV 12-2103-JGB (RNBx), 2014 WL 1370747, at *9–12 (C.D. Cal. Apr. 8, 2014) ("The weight of authority in this Circuit, however, supports the proposition that the use of a nolo contendere plea in a later civil action is permissible as it is not being used 'against the defendant' within the meaning of FRE 410.") (*citing Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988) (indicating Rule 410 was intended to bar "the use of a nolo contendere plea against the pleader in a subsequent civil or criminal action in which he is the *defendant*")(emphasis in original)); *Wetter v. City of Napa*, No. 07–04583, 2008 WL 62274, at *3 (N.D. Cal. Jan. 4, 2008) (rejecting argument that Rule 410's "against the defendant" language precludes a nolo plea from being considered in the *Heck* analysis, concluding instead: "The purpose of the *Heck* doctrine is to ensure that valid state criminal convictions and sentences are not, in effect, retroactively contradicted by subsequent federal civil actions. That purpose applies to any conviction whether by guilty plea or nolo contendere plea. Once the conviction is reduced to judgment, we do not look behind the judgment to identify the avenue lending to the judgment of conviction."); *Whitehurst v. Kauffmann*, No. 2:14-CV-4320-JVS (GJS), 2017 WL 761254, at *9 (C.D. Cal. Jan. 4, 2017), *report and recommendation adopted*, 2017 WL 754543 (C.D. Cal. Feb. 27, 2017) (citing with approval *Galvan* and *Wetter*).[6]

---

[6] The undersigned agrees with the findings and recommendations that certain other cases that appear to address this issue rely on a slightly different rationale, namely that a no contest plea is not used "against" a defendant in the *Heck* context because that plea is significant merely by the fact of its existence. *See, e.g., Arrington v. City of Los Angeles*, 2021 WL 4168156, at *1 (9th Cir. Sept. 14, 2021) ("Arrington's conviction was not admitted 'against' him as an evidentiary admission. Fed. R. Evid. 410. The *Heck* issue was decided as a matter of law by the district court— properly so, as the legal consequences of the conviction preclude him from having a cognizable section 1983 claim for false arrest and false imprisonment under *Heck*."); *Alatraqchi v. City & County of San Francisco*, 2001 WL 637429, at *2 (N.D. Cal. May 30, 2001) ("Rule 410 prohibits the use of a 'no contest' plea, against the defendant who made the plea, as an admission or as evidence of guilt in another proceeding. In this case, however, [Defendant] does not seek to use plaintiff's plea against plaintiff as an admission or as evidence of guilt. Under *Heck*, plaintiff's 'no contest' plea is significant merely by the fact of its existence, and by the fact that it resulted in a criminal conviction."). This rationale does not extend as obviously to Rule 410(a)(3)'s prohibition against statements made during a no contest plea.

12

1   If one accepts the proposition that considering a no contest plea in the context of a *Heck*

2   bar is not using that plea "against the defendant," that logic applies to the entire list of items

3   addressed by Rule 410(a) and therefore all such items may be considered in the *Heck* analysis.

4   *See* Rule 410(a) ("In a civil or criminal case, evidence of the following is not admissible *against*

5   *the defendant* who made the plea or participated in the plea discussions: . . . (1) a guilty plea that

6   was later withdrawn; (2) *a nolo contendere plea*; (3) *a statement made during a proceeding on*

7   *either of those pleas* under Federal Rule of Criminal Procedure 11 or a comparable state

8   procedure; or (4) a statement made during plea discussions with an attorney for the prosecuting

9   authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn

10  guilty plea.") (emphasis added).

11  To be sure, the issue was debatable in this Circuit before *Briseno*, and, as the findings and

12  recommendations explain, there are out-of-circuit cases that pull in the opposite direction. (*See*

13  Doc. 115 at 14 (citing *Norton v. Stille*, 2014 WL 12279521, at *2 (W.D. Mich. Apr. 14, 2014).)

14  But the issue became less debatable—at least in this Circuit—after the Ninth Circuit's ruling in

15  *Briseno*. Reconsideration rests within the "sound discretion" of the district court. *Navajo Nation*,

16  331 F.3d at 104; *see also Maryland Cas. Co. v. Gonzalez*, 848 F. Supp. 2d 1144 (E.D. Cal. 2012)

17  (reconsidering analysis of a state law issue in light of newer cases, including two non-binding

18  California appellate decisions and a California Supreme Court ruling that, while not directly on

19  point, provided "occasion for the court to pause and reexamine" its earlier reasoning). In sum, the

20  Court finds that *Briseno* provides reason for the court to reconsider and revise its prior *Heck*

21  analysis in this case. The state criminal court considered both the "probable cause statement and

22  the reports in discovery" when taking Plaintiff's no contest plea." (Doc. 106-2 at 62 (Tr. of Plea

23  Hearing, Mar. 16, 2022, 12:21-28).) Considering *Briseno*, the Court finds it appropriate to

24  consider both in applying *Heck* here.

25  Obviously, this does not end the inquiry. The Court still must evaluate whether the *Heck*

26  bar applies here. It is well established that a state prisoner's claim for damages is not cognizable

27  under 42 U.S.C § 1983 if a judgment in favor of the prisoner would necessarily imply the

28  invalidity of his conviction or sentence. *Heck*, 512 U.S. at 486–87. However, "if the district court

13

1    determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any

2    outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . ."

3    *Id*. at 487. Generally, "whether a § 1983 or other civil claim is *Heck*-barred where the underlying

4    criminal conviction was obtained by way of plea (whether no contest or guilty) turns on the

5    nature of the allegations in the civil action, the factual basis of the criminal conviction, and

6    whether success on the former would undermine the validity of the latter." *Chavez v. City of Cal*.,

7    No. 1:19-cv-00646-DAD-JLT, 2020 WL 1234503, *7 (E.D. Cal. Mar. 12, 2020).

8          A helpful summary of the relevant framework was articulated in *Correa v. Braudrick*, No.

9    1:19-CV-00369-DAD-BAK (GSA) (PC), 2022 WL 2308803, at *7 (E.D. Cal. June 27, 2022),

10   report and recommendation adopted, No. 1:19-CV-00369-ADA-CDB (PC), 2022 WL 7096437

11   (E.D. Cal. Oct. 12, 2022):

12           When a plaintiff bringing an excessive use of force claim has been
             convicted of resisting arrest, application of the *Heck* bar turns on the
13           relationship between the arrest that has been determined lawful
             in the criminal case and the use of force alleged to have violated
14           plaintiff's rights. For example, an "allegation of excessive force by
             a police officer would not be barred by *Heck* if it were distinct
15           temporally or spatially from the factual basis for the person's
             conviction." *Beets v. County of Los Angeles*, 669 F.3d 1038, 1042
16           (9th Cir. 2012); *see also Sanford v. Motts*, 258 F.3d 1117, 1120 (9th
             Cir. 2001) ("[e]xcessive force used after an arrest is made does not
17           destroy the lawfulness of the arrest"). Similarly, *Heck* does not bar
             an excessive force claim based on allegations that the force used
18           was unreasonable in relation to the degree of resistance to arrest.
             *Hooper v. County of San Diego*, 629 F.3d 1127, 1133 (9th Cir.
19           2011). Such a claim, if proven, would not imply the invalidity of a
             conviction for resisting arrest. *Id*. In sum, *Heck* does not bar claims
20           against police for excessive force arising from conduct independent
             of the facts giving rise to a plaintiff's prior conviction. Smith v.
21           City of Hemet, 394 F.3d 689, 698 (9th Cir. 2005), cert. denied, 545
             U.S. 1128 (2005).
22
             In contrast, a § 1983 action must be dismissed if the criminal
23           conviction stands and arises "out of the same facts . . . and is
             fundamentally inconsistent with the unlawful behavior for which
24           section 1983 damages are sought . . ." *Beets*, 669 F.3d at 1042
             (internal citations & quotation marks omitted) (barring plaintiff's
25           § 1983 claim for excessive force when decedent killed by officer
             but accomplice convicted of aiding and abetting assault on peace
26           officer). Where the alleged wrongful conduct that serves as the
             basis of the § 1983 claim is very "closely interrelated" with the act
27           for which plaintiff was convicted, the claim is *Heck*-barred.
             *Cunningham v. Gates*, 312 F.3d 1148, 1154 (9th Cir. 2002), as
28           amended on denial of reh'g (Jan. 14, 2003) (applying *Heck* bar

where there was no break between the plaintiff's provocative act of firing on the police and the police response that he claimed was excessive).

The application of *Heck*, as the foregoing authorities demonstrate, is a highly fact-dependent inquiry that turns on the precise factual basis for the conviction. In the case at bar, Plaintiff pled no contest to a charge of violating Cal. Penal Code § 69 (resisting or obstructing an officer) and was convicted. A conviction under Cal. Penal Code § 69, which makes it a crime to resist, obstruct, or delay a peace officer in the performance of his or her duties, "can be valid even if, during a single continuous chain of events, some of the officer's conduct was unlawful," because the conviction itself "requires only that some lawful police conduct was resisted, delayed, or obstructed during that continuous chain of events." *Hooper*, 629 F.3d at 1131 (citing *Yount v. City of Sacramento*, 43 Cal. 4th 885 (2008)). The conduct on which a no contest plea to such a charge is based may coexist with conduct supporting a § 1983 claim insofar as "two isolated factual contexts exist." *Id*. at 1132. When a case involves a plea of no contest, as it does here, the question of whether the *Heck* bar applies turns on exactly what facts the plea was based on; the facts that establish the foundational basis for the plea cannot be undermined by the § 1983 claim. *See Winder v. McMahon*, 345 F. Supp. 3d 1197, 1203 (C.D. Cal. 2018).

In *Correa,* the court found that the plaintiff's civil claims could survive *Heck* because they were not necessarily inconsistent with the factual basis for his no contest plea.

[Correa's] no contest plea may be valid even if some of Defendant Braudrick's conduct was unlawful. In other words, [Correa's] guilty plea to obstructing or resisting Braudrick by spitting on him and attempting to kick him may not be invalidated by this proceeding where [Correa] alleges that as a part of the incident giving rise to his guilty plea, Braudrick also acted unlawfully by using excessive force after [Correa] was restrained following the spitting and attempted kicking by [Correa]. [Correa] testified that after he had been taken to the ground by Braudrick, and after he was handcuffed and not resisting, Braudrick continued to punch [Correa] in the face and back.

*Id*. at *8. Here, the complaint alleges in pertinent part as follows:

On Aug. 4th, 2016 Plaintiff was transferred from CSP-Corcoran to [Kern Valley State Prison and Per rule and Policy the Plaintiff was placed on orientation status until he appeared before the "ICC" (Institutional Classification Committee.)

On August 17, 2016 defendant R. Villegas and another unidentified correctional officer came to the Plaintiff's assigned housing unit C-7 for the sole purpose of escorting the Plaintiff and roughly about "9" other inmates over to the IDTT or ICC. Whereas upon the Plaintiff exiting his assigned housing Unit C-7 defendant R Villegas "immediately" placed the Plaintiff in restraints

15

(Handcuffs) based upon the Plaintiff's orientation status.

> [Footnote:] Based upon information and belief, Plaintiff believes that it may have been the un-identified correctional officer that actually placed him in restraints (handcuffs.)

The Plaintiff was thereafter instructed by defendant R. Villegas to get in line with the other inmates [who] were also all in restraints (Handcuffs).

Defendant R Villegas took the lead position of the escort and the un-identified correctional officer maintained supervision of the rear of the escort.

Plaintiff and all the other inmates were escorted over to the mental health department building where the IDTT was being held and upon arriving there the Plaintiff made some form of verbal response to a question that the inmate directly behind the Plaintiff had asked; at which time defendant R. Villegas was simultaneously instructing the Plaintiff and all other inmates under the escort to line up against the wall outside the mental health building.

Defendant R. Villegas subsequently approached the Plaintiff and stated: "What don't you understand about shut your fucking mouth"?

Plaintiff simply told defendant R. Villegas "That he didn't have to get directly in his [Plaintiff's] face and talk to him that way."

Defendant R Villegas without any provocation grabbed the Plaintiff with his left hand by the back of Plaintiff's shirt and without any warning and with great force defendant R Villegas pushed and or rammed Plaintiff's head into the wall utilizing the back part of his forearm causing the Plaintiff's head to bust open as blood began to pour down the Plaintiff's face.

The Plaintiff simply made a remark or comment of: "what the fuck"; and without any provocation defendant R Villegas took one of his feet and swept the Plaintiff off his feet causing the Plaintiff to fall forcefully to the ground as defendant R Villegas was simultaneously yelling out Code #1 assault on staff.

Defendant P. Cruz responding to the Code #1 ran to the scene and while the Plaintiff was laying on the ground in compliance and not putting up any form of a struggle or resistance defendant P Cruz struck the Plaintiff with great force and a closed fist in his right eye causing blood to pour from the Plaintiff's eye.

Plaintiff subsequently sustained numerous other non-provoked injuries as a result of the unnecessary and or misuse of force applied during the incident in question.

(Doc. 1 at 4–6 (cleaned up).)

As mentioned above, the Crime/Incident Report describes the event as follows:

On Wednesday, August 17, 2016, at approximately 0955 hours, inmate King AT4450, battered Officer [redacted] by punching him with his right fist, then becoming resistive. Inmate King was facing the wall outside the Mental Health building on the Facility C Upper Yard. Inmate King balled his hands into fists, then swung his right hand behind him striking Officer [redacted] in the right shoulder area. He then attempted to elbow [redacted] repeatedly. Using both his hands, Officer [redacted] was able to grab King by his shoulders and force him forward into the wall then to the ground with the assistance of Officer [redacted]. Inmate King continued to be resistive by thrashing his body back and forth. Officer [redacted] maintained control of King by using his hands and body weight to hold King down by his back. Officer [redacted] grabbed King's legs and maintained control of them to ensure he did not kick anyone. During this time, Officer [redacted] announced a Code 1 staff assault via his institutional radio. After Officer Cruz took control of King's legs, he stopped thrashing his body and complied with orders to submit to handcuffs.

(Doc. 106-2 at 12.) The Court finds there is no possible way these two sets of facts could simultaneously be true. Though Plaintiff's allegations diverge in many ways on many issues of fact, the key events appear to encompass the same time and factual context, beginning when the prisoners arrived at the outside of the mental health facility, extending through Officer Villegas' use of force on Plaintiff, and ending at some point after Officer Cruz arrived and used force on Plaintiff. Plaintiff maintains that he was handcuffed and not resisting the entire time. This is fundamentally inconsistent with the no contest plea. If Plaintiff were to succeed on his civil rights claims, it would necessarily undermine the validity of the factual material considered by the criminal court in accepting his no contest plea to violating Cal. Penal Code § 69. As a result, viewing the complaint in the light most favorable to Plaintiff as is required in the context of a motion for judgment on the pleadings, *Heck* bars his excessive force claims.

///

///

///

///

///

///

///

17

1

**CONCLUSION**

2      Accordingly, **IT IS ORDERED** that Defendants' motion for reconsideration (Doc. 123) is

3  **GRANTED**, and, upon reconsideration, the Defendants' motion for judgment on the pleadings is

4  **GRANTED**.[7]

5

6  IT IS SO ORDERED.

7      Dated:   **July 19, 2023**

UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[7] The magistrate judge ruled on Plaintiff's motion for leave to amend, granting him leave to add new claims against new defendants in a separate lawsuit. No party has objected to or moved for reconsideration of that ruling, so it stands.

18